# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

No. 22-1959

BERKLEY NATIONAL INSURANCE COMPANY,
Plaintiff–Appellee,
v.
ATLANTIC-NEWPORT REALTY LLC,
Defendant – Appellant,

STEPHEN PAPSIS,
Defendant,

GRANITE TELECOMMUNICATIONS, LLC,
Defendant/Third Party Plaintiff – Appellant,
v.
THE HANOVER INSURANCE COMPANY; THE HANOVER AMERICAN
INSURANCE COMPANY; LESSING'S FOOD SERVICE MANAGEMENT
CORP.,
Third Party Defendants

---

On Appeal from the United States District Court for the District of
Massachusetts, No. 1:21-cv-10626-RGS, The Honorable Richard G. Stearns

---

**REPLY BRIEF OF DEFENDANTS-APPELLANTS
ATLANTIC-NEWPORT REALTY LLC and
GRANITE TELECOMMUNICATIONS, LLC**

---

**DONNELLY, CONROY & GELHAAR, LLP**
Timothy H. Madden, 1st Cir. Bar No. 115618, thm@dcglaw.com
Nathaniel R.B. Koslof, 1st Cir. Bar No. 1175251, nrbk@dcglaw.com
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Tel: (617) 720-2880; Fax: (617) 720-3554

*Attorneys for Defendants-Appellants
Atlantic-Newport Realty LLC and Granite Telecommunications, LLC*

**ORAL ARGUMENT REQUESTED**
Dated the 29th day of June, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

ARGUMENT ...................................................................................................... 1

I.    UNDER MASSACHUSETTS LAW, BERKLEY'S
UNILATERAL, EXTRACONTRACTUAL RESERVATION
OF THE SUPPOSED RIGHT TO BE REIMBURSED WAS
INEFFECTIVE. ..................................................................................... 2

II.    DEFENDANTS' RETENTION OF THE BENEFIT OF
THE DEFENSE AND SETTLEMENT PAYMENTS IS NOT
UNJUST................................................................................................. 9

III.    THE RESTATEMENT OF LAW – LIABILITY INSURANCE
IS RELIABLE AUTHORITY SPECIFIC TO THE INSURANCE
CONTEXT AND WAS APPROPRIATELY CITED BY
DEFENDANTS. ................................................................................... 13

IV.    BERKLEY'S POLICY ARGUMENTS GO TOO FAR;
INSURERS SHOULD NOT BE GRANTED THE WINDFALL
OF AN EXTRACONTRACTUAL RIGHT TO
REIMBURSEMENT. ........................................................................... 16

CONCLUSION ................................................................................................ 23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT........... 25

CERTIFICATE OF SERVICE ....................................................................... 26

# TABLE OF AUTHORITIES

*Cases*

*American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*,
    606 Pa. 584, 2 A.3d 526 (2010) ...................................................... 7, 14

*Andrew Robinson Int'l, Inc. v. Hartford Ins. Co.*,
    547 F.3d 48 (1st Cir. 2008)............................................................. 14-15

*Attorneys Liab. Protection Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*,
    370 P.3d 1101 (Alaska 2016) ........................................................ 14

*Blinzler v. Marriott Int'l, Inc.*,
    81 F.3d 1148 (1st Cir. 1996)............................................................. 5

*Buntin v. Schlumberger Tech. Corp.*,
    487 P.3d 595 (Alaska 2021) ........................................................ 14

*Buss v. Superior Court*,
    16 Cal. 4th 35 (Cal.App. 1997) .................................................... 6-7

*Commerce Ins. Co. v. Szafarowicz*,
    483 Mass. 247, 131 N.E.3d 247 (2019)........................................ 8-9

*CVS Pharmacy, Inc. v. Lavin*,
    951 F.3d 50 (1st Cir. 2020)............................................................. 5

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)........................................................................... 4

*French King Realty Inc. v. Interstate Fire & Cas. Co.*,
    79 Mass. App. Ct. 653, 948 N.E.2d 1244 (2011) .......................... 8

*General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*,
    215 Ill. 2d 146, 828 N.E.2d 1092 (2005)...................................... 14

*Holyoke Mut. Ins. Co. v. Vibram USA, Inc.*,
    No. SUCV20152321BLS1, 2017 WL 1336600
    (Mass. Super. Ct., Mar. 21, 2017) (unpublished) ......................... 6-7

*Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc.*,
    480 Mass. 480, 106 N.E.3d 572 (2018)........................................ 6

*John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co.*,
    102 Mass. App. Ct. 474, 207 N.E.3d 542 (2023) ......................... 13-14

*Ken's Foods, Inc. v. Steadfast Ins. Co.*,
    491 Mass. 200, 199 N.E.3d 1286 (2023)...................................... 3, 22

*Lexington Ins. Co. v. CareCore Nat., LLC*,
  No. SUCV2012-01782-BLS2, 2014 WL 7477718
  (Mass. Super. Ct., July 18, 2014) (unpublished) .......................... 6-7

*Liberty Mut. Ins. Co. v. FAG Bearings Corp.*,
  153 F.3d 919 (8th Cir. 1998) ........................................ 14

*Markham v. Fay*,
  74 F.3d 1347 (1st Cir. 1996) ........................................ 5

*Medical Liab. Mut. Ins. Co. v. Alan Curtis Enters. Inc.*,
  373 Ark. 525, 285 S.W.3d 233 (2008) ............................... 14

*Med. Malpractice Joint Underwriting Ass'n of Mass. v. Goldberg*,
  425 Mass. 46, 680 N.E.2d 1121 (1997) ......................... *passim*

*Metropolitan Life Ins. v. Cotter*,
  464 Mass. 623, 984 N.E.2d 835 (2013) ........................ *passim*

*Metro. Prop. & Cas. Ins. Co. v. Morrison*,
  460 Mass. 352, 951 N.E.2d 662 (2011) ............................ 8-9

*Monell v. Boston Pads, LLC*,
  471 Mass. 566, 31 N.E.3d 60 (2015) ............................. 15-16

*Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*,
  477 Mass. 343, 76 N.E.3d 204 (2017) ........................... 21-22

*National Sur. Corp. v. Immunex Corp.*,
  176 Wash. 2d 872, 297 P.3d 688 (2013) .......................... 14

*Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  448 F.3d 252 (4th Cir. 2006) ...................................... 14

*Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.*,
  662 F.3d 74 (1st Cir. 2011) ....................................... 16

*Shoshone First Bank v. Pacific Employers Ins. Co.*,
  2 P.3d 510 (Wyo. 2000) ............................................ 14

*Texas Ass'n of Counties County Gov't Risk Mgt. Pool v.
  Matagorda County*,
  52 S.W.3d 128 (Tex. 2000) ......................................... 14

*Three Sons, Inc. v. Phoenix Ins. Co.*,
  357 Mass. 271, 257 N.E.2d 774 (1970) ............................ 22

*United States Fid. v. United States Sports Specialty*,
  270 P.3d 464 (Utah 2012) .......................................... 14

iv

*Welch Foods Inc. v. National Union Fire Ins. Co.*,
No. 09-12087-RWZ, 2011 WL 576600
(D. Mass., Feb. 9, 2011) (unpublished) ....................................... 6-7

*Westchester Fire Ins. Co. v. Wallerich*,
563 F.3d 707 (8th Cir. 2009) ....................................................... 14

### Statutes and Rules

Mass. Gen. L. ch. 93A .................................................................... 18

Mass. Gen. L. ch. 176D ............................................................ 18, 22

### Other Authorities

Restatement of the Law of Liability Insurance
§ 21 (2019) ...................................................................... 13-16, 19

Restatement (Third) of Restitution and Unjust Enrichment
§ 2 (2011) ............................................................................. 13-15

# ARGUMENT

Berkley seeks to eschew established Massachusetts law in favor of what it *thinks* the law *should* be. But what matters is not what Berkley (or its trade association Amicus) prefers, but what the law provides. Whether or not an insurer has the right to reimbursement in other jurisdictions, or in Berkley's preferred Restatement, is irrelevant to whether such a right exists in Massachusetts. Accordingly, this Court need look only to Massachusetts law – and the clear precedent from the Supreme Judicial Court ("SJC") – to determine whether Berkley has a right to reimbursement.

Moreover, Berkley's policy arguments are not only contrary to law, but also misguided. Nothing about the current state of Massachusetts law diminishes the opportunity for reasonable settlements of underlying tort actions. Instead, the approach outlined by the SJC in *Med. Malpractice Joint Underwriting Ass'n of Mass. v. Goldberg*, 425 Mass. 46, 680 N.E.2d 1121 (1997) ("*Goldberg*"), reasonably protects insureds by preventing insurers from binding an insured to a settlement to which the insured would not agree absent insurance coverage. Where an insured has clearly refused to settle under the terms and conditions proposed by its insurer (*i.e.*, with the insurer retaining a right to reimbursement), it is unreasonable to allow the insurer nevertheless to settle a case with the intention of contesting coverage and seeking reimbursement, arrogating to itself a right for which it did not contract. There is no

basis in law or logic to give an insurer this significant, extracontractual right for which it has not bargained.

Accordingly, for the reasons stated herein and in Defendants' opening brief, the judgment below should be reversed and the claims against Defendants dismissed.

## I. UNDER MASSACHUSETTS LAW, BERKLEY'S UNILATERAL, EXTRACONTRACTUAL RESERVATION OF THE SUPPOSED RIGHT TO BE REIMBURSED WAS INEFFECTIVE.

The SJC in *Goldberg* held that an insurer's unilateral, extracontractual reservation of a right to reimbursement, even if acknowledged by the insured, is unenforceable. Contrary to Berkley's argument, the SJC's holding in *Goldberg* is clear and must be followed here, regardless of the law in some other jurisdictions or the suggestion of Berkley's non-insurance-related Restatement of choice.

In *Goldberg*, the SJC made clear that an insurer may seek reimbursement in very limited circumstances: (i) "*only if the insured has agreed* that the insurer may commit the [insurer's][1] own funds to a reasonable settlement with the right later to seek reimbursement from the insured"; or (ii) "if the insurer secures specific authority to reach a particular settlement *which the insured agrees to pay*." *Id*. at 58-59, 680 N.E.2d at 1129 (emphasis added). Alternatively, "[t]he insurer may also notify the insured of a reasonable settlement offer and *give the **insured** an opportunity to accept*

---

[1] *Goldberg* says "insured's" but that "typographical error" was corrected by the SJC in *Metropolitan Life Ins. v. Cotter*, 464 Mass. 623, 642, n.20, 984 N.E.2d 835, 849, n.20 (2013).

2

*the offer or assume its own defense*." *Id.* (emphasis added). In other words, under Massachusetts law a contractual right to reimbursement may only arise by express agreement between insurer and insured; alternatively, the insurer can negotiate the best settlement available and allow the insured to pay the settlement itself, or if the insured declines, to take over its own defense.

Berkley concedes that the Berkley Policy does not provide for reimbursement.[2] Moreover, it is beyond dispute that Berkley failed to pursue any of the options outlined in *Goldberg*:

(i)  Defendants <u>never agreed</u> that Berkley may commit its funds to a settlement with the right to seek reimbursement from Defendants;

(ii)  Defendants <u>never agreed</u> that <u>they</u> would pay a settlement; and

(iii)  Berkley <u>never</u> told Defendants they must either accept the proposed settlement and pay it themselves or assume their own defense. And Defendants <u>never agreed</u> to do so.[3]

---

[2] In its amicus brief, Complex Insurance Claims Litigation Association ("Amicus") advances the absurd position that "the policy *does* provide for recoupment because there is no coverage under the policy language" and that "there is no need for the policy to go further to describe the insurer's rights with respect to recouping any costs advanced for uncovered claims." Amicus at 13. That position, however, not only defies logic but it has absolutely no support in the law. A contract – including an insurance policy – does not impose affirmative rights and obligations on the parties where it remains silent on an issue. *See, e.g., Ken's Foods, Inc. v. Steadfast Ins. Co.*, 491 Mass. 200, 201 199 N.E.3d 1286, 1288 (2023) (declining to read into an insurance policy an extracontractual right to reimbursement for amounts expended by an insured to avoid imminent covered loss, stating that an "insurance policy is a contract between two private parties that should be interpreted according to its plain terms, which reflect the benefit of the bargain struck by the parties, including their allocation of risk").

[3] When asked, Defendants flatly refused to contribute to the settlement or agree to reimburse Berkley should it prevail on its coverage position. RA 586. Accordingly,

3

Accordingly, under established Massachusetts law, Berkley does not have the right to be reimbursed by Defendants. Having ignored the SJC's teachings in *Goldberg*, Berkley must now be required to live with its decision to voluntarily fund the settlement of the Underlying Action without a right to reimbursement.

In its brief, Berkley dramatically misstates Defendants' position so to make it appear extreme when it is not. Appellee's Brief at 13 ("Defendants' argument is quite simple: insurers should never be allowed to recoup defense costs or a settlement payment absent an express policy provision granting this right. Defendants also assert that there cannot be an equitable right to restitution in cases involving a written agreement."). In truth, Defendants merely implore this Court to follow the SJC's clear instruction in *Goldberg* and deny reimbursement outside of the limited circumstances described therein, which do not exist here. *Id*. at 58-59, 680 N.E.2d at 1129.

Indeed, this Court is obligated to follow the clear directive of the SJC. *See generally, Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). And to the extent there is any question about whether the law in Massachusetts is settled on the relevant points, this Court's "job is to 'ascertain the rule the state court would most likely follow under the

---

pursuant to *Goldberg*, if Berkley remained committed to its position that it did not owe coverage, Berkley should have told Defendants that if they wanted to settle, they had to pay the settlement themselves and that Berkley did not otherwise intend to continue to defend or to indemnify them. *Id*. at 58-59, 680 N.E.2d at 1129 ("[t]he insurer may also notify the insured of a reasonable settlement offer and <u>give the **insured** an opportunity to accept the offer or assume its own defense</u>") (emphasis added).

circumstances.'" *CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 58 (1st Cir. 2020), *quoting Blinzler v. Marriott Int'l, Inc*., 81 F.3d 1148, 1151 (1st Cir. 1996).  To do so, this Court "may look to 'analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law' for guidance." *Id*.  But in doing so this Court must "take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts."  *Id*., *quoting Markham v. Fay*, 74 F.3d 1347, 1356 (1st Cir. 1996).  For the reasons articulated herein and in Defendants' opening brief, to the extent there is any question about Massachusetts law as applied to this case, it is abundantly clear that consistent with its prior decisions, the SJC would deny any extracontractual right to reimbursement, both as to defense costs and settlement payments, and dismiss Berkley's claims against Defendants.  Any other ruling would be inconsistent with the current boundaries of Massachusetts law, and Berkley has not cited any authority indicating the SJC would consider revisiting *Goldberg* or that this Court should import the conflicting law of other jurisdictions as a basis to predict how the SJC would rule here.

Moreover, Berkley's cursory dismissal of the clear Massachusetts case law cited by Defendants in favor of cases from other jurisdictions is both misleading and unavailing.  Since the SJC's decision in *Goldberg*, trial courts in Massachusetts have repeatedly held that an insurer's unilateral, extracontractual reservation of rights does

not create a right to reimbursement as to either defense costs or indemnity payments.[4]

Berkley seeks to limit these cases to circumstances where "an insurer already had a duty to defend," but that is not an accurate description of those cases, which plainly did not turn on any such distinction.

For example, in *Holyoke Mut. Ins. Co.*, the Superior Court (Business Litigation Session) determined there was no duty to defend, thus the issue became one of recoupment. 2017 WL 1336600, at *1 ("this court held that the Policies do not provide coverage for the claims asserted against [the insured] in the Underlying Action and, accordingly, there is no duty to defend"). Denying the insurer's plea for recoupment, Judge Kaplan put it thusly:

> There is simply nothing in the Policies that provides a right to recoup defense costs that the Insurers have advanced because they concluded that it was in their economic interest to do so. The court rejects the argument relied upon in [*Buss v. Superior Court*,

---

[4] *Holyoke Mut. Ins. Co. v. Vibram USA, Inc.*, No. SUCV20152321BLS1, 2017 WL 1336600, at *6 (Mass. Super. Ct., Mar. 21, 2017) (unpublished), *rev'd and remanded sub nom. Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc.*, 480 Mass. 480, 106 N.E.3d 572 (2018) ("A right to reimbursement must be found in a contract."); *Lexington Ins. Co. v. CareCore Nat., LLC*, No. SUCV2012-01782-BLS2, 2014 WL 7477718, at *4 (Mass. Super. Ct., July 18, 2014) (unpublished) ("[A]lthough an insurer may agree to pay the costs of defending its insured while specifically reserving its right to disclaim liability, it cannot seek reimbursements of amounts subsequently paid to indemnify its insured against liability unless there was a specific agreement between them at or before the time payment was made, that the insured may thereafter have to pay back that amount. A unilateral reservation of rights is not enough.") (internal citations omitted); *Welch Foods Inc. v. National Union Fire Ins. Co.*, No. 09-12087-RWZ, 2011 WL 576600 (D. Mass., Feb. 9, 2011) (unpublished) (no right to reimbursement of defense costs where no such provision was included in the policy at issue).

> 16 Cal. 4th 35 (Cal.App. 1997)] and its progeny that to deny recovery of defense costs will give insureds more than they bargained for, *i.e.*, partial payment for the cost of defending claims that were not covered by the policies that they purchased. The court finds the reasoning of [the Pennsylvania Supreme Court in *American & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 2 A.3d 526 (2010)] more persuasive: "In some circumstances, an insurance company may face a difficult decision as to whether a claim falls, or potentially falls, within the scope of the insurance policy. However, it is a decision the insurer must make." [*Id.*, at 543].

*Holyoke Mut. Ins. Co.*, 2017 WL 1336600, at *6.

In *Lexington Ins. Co.*, 2014 WL 7477718, another Business Litigation Session decision, the question did not turn on whether there existed a duty to defend, rather whether the insured's retention of the benefits paid was unjust (it was not, the insured having engaged in no "intentional misrepresentation tantamount to fraud" or any similar conduct, just like here). *Id.* at *4-5.

And in *Welch Foods Inc.*, 2011 WL 576600, Judge Zobel entered a declaratory judgment that three insurers had no duty to defend the claims, but later denied reimbursement to the one insurer who had defended under a reservation of rights. *Id.* at *3 (rejecting the notion that a reservation of rights letter creates an implied contract and denying reimbursement, stating that "*Jerry's Sport* achieves an appropriate allocation of responsibilities and, therefore, that the insurer bears the responsibility for making this determination, and the concomitant risk if its decision to advance fees is wrong").

Berkley's citation to *French King Realty Inc. v. Interstate Fire & Cas. Co.*, 79 Mass. App. Ct. 653, 668, 948 N.E.2d 1244, 1257 (2011), is also unavailing. *French King* involved an insurer's recovery of an advance erroneously paid to its insured on a first party property claim, which advance was paid before the insurer completed its investigation, and which claim was later determined not to be covered. *Id.* The case turned on the notion that "an insurer is entitled to reimbursement for an *erroneous* payment when coverage does not exist under the policy and the insured was unjustly enriched and did not change position to its detriment in reliance on the payment[.]" 79 Mass. App. Ct. at 669 (emphasis added). The differing context – here the Berkley payments were not "erroneous" but voluntary, and Defendants *did* change their position vis-à-vis Papsis in reliance on the settlement – renders *French King* irrelevant. Furthermore, *French King* did not involve a reservation of rights, *id.* at 668, absent which even Berkley concedes that it would not have any potential right to reimbursement. *See generally*, Appellee's Brief. In short, *French King* was limited to its particular facts and does not support reimbursement in the context of this case.[5]

---

[5] Similarly, Berkley's citation to *Commerce Ins. Co. v. Szafarowicz*, 483 Mass. 247, 131 N.E.3d 247 (2019), is misplaced. Berkley misleadingly claims that case counters Defendants' argument that Berkley could have intervened in the Underlying Action and moved to stay that action while it sought its coverage determination. But *Commerce Ins. Co.* says no such thing. Defendants' argument is based on the SJC's statement in *Metro. Prop. & Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 359, 951 N.E.2d 662, 668 (2011), that "[w]here there is uncertainty as to whether an insurer owes a duty to defend, the insurer has the option of providing an insured with a defense under a reservation of rights, filing a declaratory judgment action to resolve whether it owes a

## II. DEFENDANTS' RETENTION OF THE BENEFIT OF THE DEFENSE AND SETTLEMENT PAYMENTS IS NOT UNJUST.

Although the SJC in *Cotter* entertained the possibility there may be an equitable right to reimbursement under certain circumstances, Berkley merely glosses over the *outcome* of *Cotter*, which is that the insurer was *denied* reimbursement due to its failure to demonstrate that the insured's retention of the benefits paid was unjust. In *Cotter*, the insurer "did little more than establish that it made timely benefit payments under an extracontractual and unilateral reservation of rights" but "failed to meet its burden of establishing that it was *unjust* for [the insured] to retain the … benefits [it] received following the insurer's unilateral reservation of rights." 464 Mass. at 644-47, 984 N.E.2d at 852 (emphasis added). The same is true here.[6]

The law is clear that even if Berkley could pursue an equitable claim against Defendants notwithstanding the Berkley Policy, to state such a claim Berkley must demonstrate that it would be unjust for Defendants to retain the benefits afforded them. Courts generally only find that retention of a benefit is unjust in instances involving fraud, bad faith, violation of trust, or breach of duty. *See Cotter*, 464 Mass. at 644, 984

---

duty to defend or to indemnify, [and] moving to stay the underlying action until a declaratory judgment enters…." *Commerce Ins. Co.* cites that very passage and merely points out that such a stay is not *always* available as a matter of law; instead, a party seeking a stay must demonstrate that a stay is appropriate under the circumstances, and the decision is within the discretion of the trial court. 483 Mass. at 257.

[6] At worst, there exists a disputed issue of fact as to whether Defendants' retention of the benefits is unjust, requiring the denial of summary judgment.

N.E.2d at 851, 853 ("[A]bsent some indication of fraud on the part of the insured . . . or conduct of comparable gravity, an insurer bears a heavy burden when it seeks to show that the insured's retention of . . . benefits was unjust."). No such conduct is even alleged here. *See* RA 011-026 (Am. Compl.).

To support its misguided contention that Defendants' retention of the benefit of Berkley's settlement payment is unjust, Berkley points to: (i) the fact Defendants had notice of Berkley's intention to seek reimbursement, and (ii) Defendants' August 25 Letter. Neither, however, renders unjust Defendants' retention of the benefit received.

First, it is inconsequential that Defendants had advance notice of the settlement and of Berkley's intention to seek reimbursement. Although true that Defendants had notice of Berkley's position with respect to reimbursement, *Berkley also had notice of Defendants' position* before it finalized and paid the settlement. RA 586. When Berkley voluntarily chose to proceed with the settlement notwithstanding Defendants' refusal to agree to a right to reimbursement, it did so with its eyes wide open, presumably because Berkley believed doing so was in its own best interests. Moreover, the parties' knowledge of their respective positions regarding reimbursement of the settlement payment does not change the fact that *the Berkley*

_Policy does not provide for reimbursement_.  There is simply nothing unjust about any of this conduct. [7]

Second, guided by the SJC's decision in _Goldberg_, the August 25 Letter does not render unjust Defendants' retention of the benefit of the settlement Berkley paid. As explained in their opening brief, Defendants' conduct is not materially different than what Goldberg himself did, when his lawyer wrote to the insurer: "with all the firmness that I can bring to the matter, I submit to you that you have an obligation . . . to try to settle this case within the policy limits.  Further, there is no good faith basis for a failure of your company to carry out that obligation."  425 Mass. at 51, 680 N.E.2d at 1124.  Berkley's contention that by their August 25 Letter Defendants "unjustly coerced" Berkley into the settlement wildly overstates the force and effect of that letter, ignores that Berkley could have walked away from coverage (reverting to their initial coverage position, RA 341-348), fails to appreciate the August 25 Letter's similarity to the letter sent by Goldberg, and ignores that Defendants expressly told Berkley before Berkley finalized any settlement that they declined to agree to a right of reimbursement (RA 586).  Appellee's Brief at 50.  As the letter in _Goldberg_ was not

---

[7] Berkley similarly asserts that counsel for Defendants "played an active role" in the settlement discussions.  Appellee's Brief at 12.  However, there are no facts in the record to support this assertion aside from counsel's mere presence at the mediation. In any event, the extent of involvement of the insured's lawyer in settlement negotiations has no relevance to whether any retention of a benefit is unjust, and Berkley has not cited any supporting case law holding otherwise.

deemed "coercive" nor did it otherwise render unjust Goldberg's retention of the benefits paid on his behalf, the August 25 Letter similarly cannot be a basis for a finding that it would be unjust for Defendants to retain the benefit of the payment made by Berkley.

As for the defense costs, there is also nothing unjust about Defendants retaining the benefit of those payments. After initially declining coverage, RA 341-348, Berkley defended subject to a reservation of its right to stop defending, which it ultimately did when the Underlying Action was settled. RA 358. Berkley was not tricked into defending the Underlying Action, Defendants did not conspire with Papsis to cause him to plead a covered claim, nor did Defendants engage in any other similar conduct that might render unjust their retention of the defense costs paid on their behalf. Moreover, *Berkley never – not once – reserved any supposed right to be reimbursed for defense costs*. RA 357-358, 360-362. And, it should not be lost that substantially *all* of the defense payments were made *before* the August 25 Letter was ever sent.[8] It should thus be determined without hesitation that Berkley has no equitable (or contractual) right to be reimbursed for defense costs.

---

[8] The Underlying Action was mediated and settled on August 31, 2021, six days after the August 25 Letter, after Berkley defended the case for well over a year. ECF 1, RA 595-596.

There are simply no facts in the record that render unjust Defendants' retention of the benefits afforded them. As a matter of law, Berkley has no equitable right to reimbursement, and it was error for the District Court to rule otherwise.

## III. THE RESTATEMENT OF LAW – LIABILITY INSURANCE IS RELIABLE AUTHORITY SPECIFIC TO THE INSURANCE CONTEXT AND WAS APPROPRIATELY CITED BY DEFENDANTS.

Contrary to Berkley's suggestion, it was entirely appropriate for Defendants to cite the Restatement of the Law of Liability Insurance § 21 (2019) ("RLLI") rather than the Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("R3RUE") that Berkley prefers.

First and foremost, consistent with the rule outlined in the RLLI, the SJC in *Cotter* "acknowledged in dicta the line of cases that decline to allow recoupment based on the theory that insurers are in the business of analyzing and allocating risk, and thus in a better position to do so." *John Moriarty & Assocs., Inc. v. Zurich Am. Ins. Co.*, 102 Mass. App. Ct. 474, 486, 207 N.E.3d 542, 553 (2023) ("*Moriarty*"), *quoting Cotter*, 464 Mass. at 642 n.21, 984 N.E.2d 835.

Second, the RLLI was recently discussed extensively by the Massachusetts Appeals Court in *Moriarty*. While the Appeals Court ultimately concluded that "whether an insurer may seek to recoup costs of a defense undertaken pursuant to a unilateral reservation of rights is an open issue under Massachusetts law," 102 Mass.

App. Ct. at 486,[9] and remanded the case for further proceedings, *id.* at 474, in doing so the Appeals Court noted that "[s]everal jurisdictions espouse the view that recoupment is not permissible, at least in the absence of an express provision in the policy or a subsequent agreement between the parties." *Id.* at 486.[10] The Appeals Court further noted that this view has "gained traction in recent years" and was "adopted as the default rule by the authors of the [RLLI] in 2019[,]" and highlighted the disagreement between the RLLI and the R3RUE. *Id.* at 486-487; *id.* at 487 n.11. Based on *Cotter* and *Moriarty*, the principles outlined in the RLLI are the most informative predictor of how the SJC would rule. *See, e.g., Andrew Robinson Int'l,*

_____

[9] The Appeals Court was only indicating that there is no SJC case directly on point; as argued, there are a number of trial court cases on point, each of which deny reimbursement absent agreement.

[10] The Appeals Court in *Moriarty* cited the following out-of-state cases that decline to recognize a right to recoupment: *Attorneys Liab. Protection Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1112 (Alaska 2016), *abrogated on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595, 598 n.4 (Alaska 2021); *Medical Liab. Mut. Ins. Co. v. Alan Curtis Enters. Inc.*, 373 Ark. 525, 527-530, 285 S.W.3d 233, 235-237 (2008); *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 162-163, 166, 828 N.E.2d 1092, 1102-1104 (2005); *Jerry's Sport Ctr., Inc.*, 606 Pa. at 613-614, 2 A.3d at 543-544; *United States Fid. v. United States Sports Specialty*, 270 P.3d 464, 471 (Utah 2012); *National Sur. Corp. v. Immunex Corp.*, 176 Wash. 2d 872, 887-888, 297 P.3d 688, 694-695 (2013); *Shoshone First Bank v. Pacific Employers Ins. Co*., 2 P.3d 510, 513–514 (Wyo. 2000); *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 719 (8th Cir. 2009) (applying Minnesota law); *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am*., 448 F.3d 252, 258-259 (4th Cir. 2006) (applying Maryland law*); Liberty Mut. Ins. Co. v. FAG Bearings Corp*., 153 F.3d 919, 924 (8th Cir. 1998) (applying Missouri law); *Texas Ass'n of Counties County Gov't Risk Mgt. Pool v. Matagorda County*, 52 S.W.3d 128, 131, 135-136 (Tex. 2000) (declining to permit reimbursement of settlement costs under reservation of rights). *John Moriarty & Assocs., Inc.*, 102 Mass. App. Ct. at 486, n.10.

14

*Inc. v. Hartford Ins. Co.*, 547 F.3d 48, 54-55 (1st Cir. 2008) ("Two opinions emanating

from the state's intermediate appellate court also have exhibited a readiness to look to

a corresponding provision contained in tentative drafts of the transitional Restatement.

. . . While decisions of a state's intermediate appellate court are not binding on a federal

court sitting in diversity, such opinions are entitled to some weight.") (citations

omitted).

Third, the RLLI is more recent than the R3RUE. The RLLI was published in

2019, whereas the R3RUE was published in 2011. This is significant because it

explains why the SJC in *Cotter* cited the R3RUE and not the RLLI – the *Cotter* decision

was rendered in 2013, six years *before* the RLLI was even written. 464 Mass. at 641.

Fourth, the RLLI is *specific to the insurance context*, whereas the R3RUE is a

*general* statement of equitable principles. It is significant that the authors of the RLLI

considered the R3RUE and consciously deviated therefrom in the specific context of

insurance law. RLLI § 21 (2019) ("Because the R3RUE treats recoupment of liability

insurance defense costs as an instance to which the general view of restitution should

apply, *without taking full account of these special considerations of insurance law*, this

Restatement departs from the defense cost reimbursement position taken in Comment

c to R3RUE § 35, which would permit reimbursement.") (emphasis added).[11]

---

[11] Just like in cases involving statutory or contractual interpretation, the more specific
restatement should control over the more general. *See, e.g., Monell v. Boston Pads,
LLC*, 471 Mass. 566, 577, 31 N.E.3d 60, 69 (2015) ("The judge's reliance on the

For these reasons, to the extent the Court considers either of these Restatements as persuasive authority, it should give greater weight to the authority that is more recent (thus reflecting modern trends), specific to insurance law, and reflects concepts favored by the SJC and Massachusetts Appeals Court – the RLLI.

## IV. BERKLEY'S POLICY ARGUMENTS GO TOO FAR; INSURERS SHOULD NOT BE GRANTED THE WINDFALL OF AN EXTRACONTRACTUAL RIGHT TO REIMBURSEMENT.

The SJC, in *Goldberg* and *Cotter*, set forth the contours of Massachusetts law on an insurer's right to reimbursement in circumstances such as those presented here. In response, the Massachusetts Legislature has not taken any contrary action. Notwithstanding these clear expressions of the current state of Massachusetts law, Berkley argues that awarding insurers a right to reimbursement is good public policy. But Berkley's policy arguments are misguided, self-serving and contrary to the actual public policy espoused by the SJC and the Massachusetts Legislature.

Berkley argues it is important to promote a public policy that encourages insurance companies to defend claims even when coverage is uncertain. That may be true. But such a policy does not favor granting insurers the significant power to force settlements upon their insureds and then seek to recoup the settlement amounts (or

_____

familiar canon of construction providing that a specific statute . . . controls over the provisions of a general statute . . . is appropriate here.") (citing cases); *Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 96 (1st Cir. 2011) ("It is a well-known precept for the interpretation of contracts that specific provisions in a contract trump the general provisions.").

defense costs), absent a contractual provision or other agreement to that effect. If an insurer is confident that a claim is not covered, it is free to inform the insured of its position and cease defending the case. An insurer must not, however, be empowered to commit its insured to a settlement the insured may not want if it were funding the settlement itself, with the ability to then pursue the insured for the amounts it voluntarily decided to pay despite its position that the claim was not even covered. As outlined in *Goldberg*, under such circumstances the decision to settle (or not) should be put squarely on the insured.

Here, Berkley initially declined coverage. RA 341-348. Berkley then rethought its position and defended under a reservation of rights *to stop defending the lawsuit going forward*. RA 358 ("[Berkley] is reserving its rights to bring an action for declaratory relief to be relieved of any *continuing obligation* to provide a defense to this case. Pending the receipt of such a determination, however, Berkley National will provide a full defense to the Papsis case and will pay all reasonable costs and fees associated with its defense.") (emphasis added). Berkley did not reserve any supposed right to seek reimbursement of amounts paid to defend or settle the Underlying Action. RA 357-358, 360-362.

Thereafter, Berkley decided to settle the Underling Action, and did so notwithstanding Defendants' refusal to agree to reimbursement (which refusal was clearly communicated by Defendants *before* Berkley finalized or paid any settlement,

RA 586). Once Defendants refused to agree to reimbursement, Berkley had a choice to make: it could either decline to settle the Underlying Action and stop defending the case (and take on the risk of a chapters 93A/176D claim), or it could choose to settle the Underlying Action without a right to reimbursement and pay the settlement itself (and cut off any potential 93A/176D liability). *Goldberg*, 425 Mass. at 58-59, 680 N.E.2d at 1129. It chose the latter.

Berkley makes much of the fact that Defendants participated in the mediation and were aware of the settlement. Appellee's Brief at 12. Yet Defendants not only *never agreed* to settle on the terms Berkley proposed – *i.e.*, with Berkley reserving the right to seek reimbursement of the settlement payment – but Defendants expressly *rejected* that overture and did so *before* the settlement agreement was entered and *before* Berkley paid the settlement. RA 586. Berkley's position ignores the very real possibility that an insured would prefer to go to trial rather than settle, particularly where liability is in question and where the insured may ultimately have to pay the settlement itself. Indeed, the incentive for the insured to settle is dramatically different when the source of the settlement is an insured's own funds, rather than insurance proceeds (again, hence the rule in *Goldberg*). Berkley's arguments ignore these economic realities and take the fundamental decision of whether to settle out of the insured's hands, even where the insurer disputes coverage and intends to later force the insured to foot the bill.

Moreover, there is nothing unjust about refusing to award insurers an extracontractual right to reimbursement. As noted in the RLLI § 21 (2019):

> Some might contend that the default rule followed in this Section is unjust to insurers, because it results in policyholders receiving coverage that they did not contract for. That argument, however, assumes its own conclusion. The reason we need a default rule is that the contract does not say expressly whether recoupment will be provided to the insurer or not. Therefore, it is wrong to conclude that the policyholder did not purchase the right not to face a recoupment action. That is in fact the question at issue. That is the gap in the policies for which a default rule must be selected.

Insurers like Berkley will not be hamstrung, "strip[ped] … of any legal recourse" and left without a workable solution. Appellee's Brief at 19. Indeed, the SJC issued its *Goldberg* ruling in 1997, and the insurance contracts at issue here were agreed to by Berkley and Defendants in 2016. RA 078, 593 (CSMF ¶ 12). Berkley (and the Amici) therefore had *19 years* to negotiate with insureds for an express contractual right of recoupment in circumstances like those presented here, circumstances no doubt foreseeable to sophisticated insurance companies like Berkley (and Amici's constituents). But Berkley chose not to do so. Far from being hamstrung, Berkley could have included a right to reimbursement in its policies, but it chose not to.

Insofar as insurers are concerned that insureds will push-back on inclusion of a reimbursement provision in their policies, or that insurers will have to give significant premium concessions as a result, those concerns only underscore why in the absence

of such language insurers cannot just be awarded such a valuable extracontractual right.  As of now, _insurers like Berkley have not bargained for a right to reimbursement_ – and, conversely, insureds like Defendants _have_ bargained for an insurance policy that _did not_ include a right to reimbursement – thus it is the _insurers_ who would receive an unwarranted windfall should Berkley's position prevail.

Moreover, the law as espoused in _Goldberg_ does not "reduce the opportunity for reasonable settlements."  Amicus at 11.  Instead, this approach protects insureds by preventing insurers from binding them to settlements under terms and conditions the insureds would not themselves choose to enter absent coverage.  Where an insured has clearly refused to settle with the insurer retaining a right to reimbursement, it is unreasonable to allow the insurer to nevertheless spend the insured's money and bind the insured to a settlement and then have a right to seek reimbursement.[12]

Similarly, Berkley's proposal to award insurers an extracontractual right to reimbursement does not "promote judicial economy."  Amicus at 10-11.  This argument presupposes that the insured somehow dictates the pace of resolution of an

---

[12] Amicus concedes this point when it argues that insurers should be entitled to reimbursement "so long as the reservation of the right to recoup payments was communicated to the insured, which – knowing of and _without_ expressly refusing to consent to the insurer's reservation – then accepted defense or indemnity payments from the insurer."  Amicus at 28 (emphasis added).  Here, Defendants _did_ expressly reject the proposal that Berkley pay the settlement subject to a right to reimbursement, and they did so before any settlement was agreed to or any such payments were made. RA 586.  So even under Amicus' view of what the law should be, reimbursement is not appropriate in this case.

insurer's coverage dispute, which simply is not the case.  Here, Berkley *waited more than a year* before it initiated its coverage action against Defendants, ECF 1 (Complaint, filed April 15, 2021), undermining any suggestions that Defendants were the cause of any delay or that Berkley could not have sought a stay or otherwise gotten a declaration as to coverage before the Underlying Action was ready for trial.

Any claim that Defendants' position would present a "catch-22" is also unavailing.  As noted above, insurers have had since 1997, when *Goldberg* was decided, to include an express reimbursement right in their contracts.  Going forward, insurers can seek to include a right to reimbursement in their policies.  This is their prerogative and will not impede a policy that favors settlement.

Moreover, as recognized by the SJC in *Cotter*, 464 Mass. at 642 n.21, insurers are well-equipped to determine whether or not they believe that claims are covered, and they should be made to stand by their assessments.  The prospect of facing what it views as a meritless bad faith claim does not dispense of the insurer's free will.  Indeed, if a bad faith claim is meritless, the insurer will face no liability and it will not be in a worse position than if it is required to initiate a coverage action, like Berkley did here.

Finally, Berkley praises the virtue of courts being "flexible in devising practical solutions to problems involving insurance claim handling," Appellee's Brief at 22-23, yet Berkley fails to appreciate that even in the cases it cited, this flexibility generally inures to the benefit of the insured, not the insurer.  *See Mount Vernon Fire Ins. Co.*

*v. Visionaid, Inc.*, 477 Mass. 343, 351, 76 N.E.3d 204, 210 (2017) (explaining the "in for one, in for all" rule obligates an insurer to defend *all* claims alleged against its insured even if some are not covered); *Three Sons, Inc. v. Phoenix Ins. Co.*, 357 Mass. 271, 276, 257 N.E.2d 774, 776 (1970) (confirming an insured's right to choose its own counsel). This flexibility in favor of the insured only makes sense given the power dynamics at play and the Commonwealth's public policies favoring insureds (*see, e.g.*, Chapter 176D), and only serves to underscore the district court's error in this case.

\*    \*    \*

In sum, the great weight of Massachusetts law favors the conclusion that Berkley has no right to reimbursement. The SJC in *Goldberg* denied reimbursement of a settlement under similar facts. The SJC in *Cotter* not only relied on *Goldberg* to deny reimbursement as a matter of contract, but also denied reimbursement as a matter of equity where there was no <u>*unjust*</u> conduct (like here) and held that mere retention of the benefit is not enough. Massachusetts state and federal trial courts have followed these cases and denied reimbursement of settlements and defense costs. And the SJC in *Ken's Food* recently declined to read into an insurance contract a right to reimbursement where equity might suggest it could have (*i.e.*, where the insured voluntarily paid to avoid an imminent covered loss, thereby saving the insurer a substantial sum). Thus, the law in Massachusetts is clear: Berkley is not entitled to reimbursement of the defense or settlement payments it made on Defendants' behalf.

For the reasons articulated herein and in Defendants' opening brief, to the extent there is any question about Massachusetts law as applied here, it is abundantly clear what the SJC would do: it would deny any extracontractual right to reimbursement, both as to defense costs and settlement payments, and dismiss Berkley's claims against Defendants with prejudice. To rule otherwise would be inconsistent with the current boundaries of Massachusetts law.

## CONCLUSION

For the foregoing reasons and those articulated in Defendants' opening brief, Defendants respectfully ask this Court to reverse the District Court's denial of their Motion for Judgment on the Pleadings and Order the dismissal of Counts I, II and III of the Amended Complaint. Alternatively, Defendants respectfully ask this Court to reverse the District Court's allowance of Berkley's Motion for Summary Judgment and remand the case for trial.

Respectfully submitted,

**ATLANTIC-NEWPORT REALTY, LLC and
GRANITE TELECOMMUNICATIONS, LLC**

By their attorneys,

Date: June 29, 2023          */s/ Timothy H. Madden*
Timothy H. Madden
1st Cir. Bar No. 115618
Nathaniel R.B. Koslof
1st Cir. Bar No. 1175251
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Tel: (617) 720-2880
Fax: (617) 720-3554
thm@dcglaw.com
nrbk@dcglaw.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Undersigned counsel certifies that this document complies with the type- volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i)-(ii). According to the word-processing system used to prepare this brief, Microsoft Word, the word count for this brief, excluding the part of the document exempted by Fed. R. App. P. 32(f), is 6,316 words.

Date: June 29, 2023

*/s/ Timothy H. Madden*
Timothy H. Madden
1st Cir. Bar No. 115618
Nathaniel R.B. Koslof
1st Cir. Bar No. 1175251
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Tel: (617) 720-2880
Fax: (617) 720-3554
thm@dcglaw.com
nrbk@dcglaw.com

*Attorneys for Defendants-Appellants*
*Atlantic-Newport Realty LLC and Granite*
*Telecommunications, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, I electronically filed the foregoing Reply Brief of Defendants-Appellants Atlantic-Newport Realty LLC and Granite Telecommunications, LLC using the Court's CM/ECF system which will send notification to the following parties and/or counsel of record:

Michael F. Aylward, Esq.
Morrison Mahoney LLP
250 Summer Street,
Boston, MA 02210

Date:  June 29, 2023

*/s/ Timothy H. Madden*
Timothy H. Madden
1st Cir. Bar No. 115618
Nathaniel R.B. Koslof
1st Cir. Bar No. 1175251
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Tel: (617) 720-2880
Fax: (617) 720-3554
thm@dcglaw.com
nrbk@dcglaw.com

***Attorneys for Defendants-Appellants
Atlantic-Newport Realty LLC and Granite
Telecommunications, LLC***